Good morning. First case this morning is 08-1117-1165, Managing your Technology v. International Trade Commission. Mr. Davis, you're first. Yes, Your Honor. May it please the Court, I'd like to address the Commission's holdings regarding Claim 34 and Claim 35 first. The Commission's failure to find infringement of Claim 34 is clearly wrong. The Commission explicitly found that the AAT 1143, 1146, and 1151 have a first and second state of operation. Indeed, the Commission, on the same page of its opinion, JA 103, at the top of the page, the Commission also found that the AAT 1265 has both states of circuit operation, but at the bottom of the page it has a contradictory finding that there was no establishment of the second stage of operation. The Commission also explicitly held that Claim 34 does not require a second or third circuit limitation as Claims 2 and 3 do. Nevertheless, the Commission found that Claim 34 was not infringed by the 1146, the 1151, and the 1265. In the case of the 1146 and the 1151, it appears that its basis for finding no infringement was its erroneous holding that those devices do not have a third circuit, a limitation that the Commission admits is not in Claim 34. On appeal, the Commission now argues a purported lack of proof. That, however, contradicts its explicit finding that the 1146 and the 1151 have both a first and a second state of operation. The Commission's newly minted argument is also both procedurally barred and factually wrong. Under Chenery, the Commission is not permitted to raise new grounds for affirmance on appeal. It has to rest on its grounds below. Second, the unrebutted evidence at trial showed that AETI itself practiced all the steps of Claim 34 for each of the accused devices. For example, at JA 1345 through 46, JA 1351 through 57, JA 1361 through 75, Dr. Pedram explained the circuit operation and the various elements of those circuits, devices. In that testimony, Dr. Pedram referenced circuit diagrams, the data sheets for those accused parts. He also explicitly discussed both the first and the second states of operation, in addition to the other limitations of Claim 34. Moreover, the unrebutted testimony of Kevin D'Angelo, AETI's 30B6 witness, was admitted into evidence, and that showed that AETI itself combined the accused chips with the external components described in AETI's data sheets and used them in the United States as described in the data sheets, thereby performing the method claimed in Claim 34. AETI's expert never disputed that all the accused devices have a state of operation in which they synchronously switch, and a state of operation where both transistors are off. Rather, his non-infringement argument was based upon the erroneous assertion that the first and the second state of operation must exclusively occur in high and low current situations, respectively. That argument was denied by the committee, when it changed the ALJ's claim construction. Now, the commission's finding that Claim 35 is invalid is likewise internally inconsistent. On the one hand, the commission found that the accused devices... This is the anticipation? This is the anticipation on the MAX782, Your Honor. So on the one hand, you have this finding that Linear did not have a prior reduction of practice, and that the AETI devices did not infringe because they monitored the current via a voltage level that was modeled on the current. But on the other hand, you have the commission finding that the MAX782 anticipates the claim when the MAX782 monitored the current in the device, looking at the voltage. And that was clear from Dr. Wei's testimony, AETI's expert. So you can't have it both ways. Either you have the unrebutted evidence that Linear reduced to practice the invention prior to the MAX782 being available, and the products are infringed, and the claim is valid, or if you uphold what we've consistently said is the wrong claim construction, that you cannot monitor the current indirectly via the voltage, then the claim is still valid. It's simply not infringed. Now, the... You all have divided this argument up into many segments. You're already in your rebuttal. Do you want to save it? I will save it, Your Honor. All right. Let's hear the next segment. Mr. Tomasz. Yes. Thank you, Your Honor. Good morning. May it please the court, Andrew Tomasz on behalf of AETI. I'm going to address the issues in AETI's appeal first, and then if there are questions on the matters raised by Mr. Davis, I'll address those afterwards. So the commission found only one of the four accused products to be infringing, and AETI's appeal found that, and the basis for the appeal is there are four claim construction issues that are erroneous. Any of those claim construction issues being reversed would require a reversal of the determination of the ITC. Also, there were, regardless of claim construction issues, a number of non-infringement issues that would also require a reversal, regardless of how their claims are construed. The one that was found on, excuse me, 1143. Correct, Your Honor. So I'm going to focus on the 1143 and the claim construction issues. The first term is, quote, a switch including a pair of synchronously switched switching transistors. Now, this language describes a particular type of structure. It's structural in nature. It starts with the phrase, a switch, which is singular and indicates a single unit. It also includes the phrase, a pair of synchronously switched switching transistors. A pair, again, is also structural, and it also describes a relationship between the two transistors and how they're controlled as a matching set. The pair is connected such that they must be synchronously switched, and synchronously switched is using the past participle. You are saying how these devices were connected in the past and designed such that they must always switch, so that one is on and the other is off, and when the first is off, the second is on. And the patent specifically describes this throughout the specification. The only description of the switch is a pair of transistors that are controlled as a single unit. Figure one is where the phrase is introduced. It's a prior art, and in figure one, the patent explains that one of the transistors must be on at all times. If one is on, the other must be off. If the first is turned off, the second must be turned on, and vice versa. Now, an interesting note that the ALJ made was in avoiding prior art below, both the commission and Linear relied on the fact that the claims require a unified switch in order to avoid prior art. What happened at the commission was the commission construed the wrong phrase. They took a partial phrase from the specification and not the claim language. And that phrase is different because it doesn't include the pair, and the synchronous switch modifier is modifying not the transistors but something else. The risk of what the commission's construction is, is it would allow for a black box that just contains two transistors that could fire randomly, and if they happen to be out of phase for a moment in time, that would meet the limitation. That's not the case here. This is not a claim that says a switch including two transistors capable of synchronous switching in the future. This says a switch including a pair of synchronously switched switching transistors. That's how they were structured. Once the claim construction is reversed and AATI's construction is adopted, this case can be reversed without a remand because the AATI's construction, there's no dispute about the facts, the AAT1143 has two switches, they each have independent logic, they can switch independently based on their logic decisions. The next phrase is the second circuit versus third circuit argument. And here all parties agree that the circuits must be distinct. The question is how does that distinctiveness become achieved? And if you look at the claim, the circuits, the second circuit and the third function. They have two distinct functions. One must switch the transistors, one must generate a signal that causes them to be off. And in the specification, all of the teachings show different circuits for achieving these different functions. There's no teaching that both functions are done by the same circuit. But the commission in linear would read the claim to say that you can create the third circuit by just taking the second circuit and tacking on any additional component regardless of whether it's relevant to the function of the third circuit. And that would be called the third circuit. The problem with that is if you take that to the logical extreme, it makes the distinction between the second circuit and the third circuit meaningless. You can take the second circuit, circle it, plus add a little resistor that has nothing to do with the function claimed in the third circuit limitation and call that the third circuit. Not only would that render both functions being performed by the second circuit, it would also create enablement and written description problems because nowhere does the patent teach that one circuit does both functions. Once that claim construction is reversed, again, we can have a reversal without a remand because there's no dispute that the ZC comparator that the commission pointed to does not play any role in the generation of the CMP signal which is the second control signal identified for the third circuit limitation. And in fact, linear in its opening brief, the blue brief at page 18, calls the ZC comparator a separate circuit. And also neither the commission nor linear dispute that if under AATI's construction there's no infringement. The third claim construction issue is the first state of circuit operation and the second state of circuit operation. In isolation, the state of circuit operation language really doesn't have a lot of meaning, but the claim gives it some context. First, there must be two distinct states, a first state of circuit operation and a second one. Second, it says circuit operation, a state of circuit operation. That is the preamble control circuit, the whole circuit, how it's operating. It is not the switch or the transistors. It doesn't say state of switch operation or state of transistor operation. That's important because if you look at the way the claim is drafted, you must be in one of the states of circuit operation first before generating either the first control signal or the second control signal. So it's a prerequisite for the generation of the control signal that actually affects the transistors. What are the two states? Excuse me? What are the two states? So you must turn to the specification and in the specification they are described. The first state is when this whole circuit is operating at high output currents or high load currents. And that is consistent throughout the specification. The second state is when the circuit is operating at low load currents. Is that sleep mode? It is the prerequisite for sleep mode. So you have a condition where the circuit is at low load currents, it realizes that it can generate the signal that turns off both transistors because the voltage can be In fact, the entire purpose of the invention is to achieve efficiencies at low load currents. And you do that by changing your state of circuit operation at low load currents. The summary of the invention at column 2 lines 42 to 47 says that the whole circuit is monitoring its operating conditions. And when the operating conditions are at low output currents, it generates the signal to turn the transistors off. And there's a large number of other quotations from the specification that I have in the briefs. The file history here is also very important. The file history shows that the same claims at issue here were issued in the very first parent. They were rejected over the prior art. Linear had to traverse the rejection and in doing so describe the applicant's invention in general and said that it's tied the states to the load current. First state is high and you have to transition to a low load current in order to transition to the second state. In the same response to the office action, they amended the claims, but they didn't amend the state of circuit operation language. They only amended language that talks about how the signals are generated. And in fact, when saying that they're amending, they said we are amending to more particularly recite the relationship between load current and the turning off of the transistors. That implies that the original claim had a relationship. If you're now more particularly describing the relationship, the original claims had the relationship. Here, the original claims are at issue. And the other thing is if you don't hold linear to its disclaimer, what doesn't make the current claims invalid over the same art that the original examiner validated these claims under? Additionally, linear's own expert, this is JA10138, initially tied first state of circuit operation as corresponding to high loads and second state as corresponding to low loads. Are you interested in reserving your time? Yes, your honor. Mr. Bartoski. Good morning and may it please the court. I'd like to pick up where Mr. Thomas has left off in claim construction, specifically regarding the first and second states of circuit operation. I really think this is, it's essential to what was defined and what was invented here in this patent. And to answer your honor's question, the second state of operation certainly is the sleep mode. And this is actually described in the patent at, I believe it's at the top of column six. And they actually, to the extent there's a definition of the states, the top of column six describes the sleep mode is the state of circuit operation where both transistors are off. And this goes, you know, directly to Mr. Thomas's argument that the states of circuit operation should not be defined in terms of the status of the transistors. That's directly contradicted by the patent. He argues that the state is dependent on a condition, load current. And if you read the patent as a whole, what they invented was a way to save efficiency by going into the second state, sleep mode. Now, granted the problem that they use this invention to solve was one they observed in voltage regulators and that was low efficiency at low load currents. So they implemented it sure enough in the embodiments at low load currents. You mean where the current goes so low that it reverses and is turned off? I'm sorry. No, your honor, that's specific to the reverse current protection claim, which is claim 35. This is the sleep mode. What the inventors had observed in voltage regulators was that they didn't maintain the same efficiency because they were maintaining the transistors switching at low load currents and they didn't need to. The current could be provided by the capacitor. So they used the sleep mode, which is their invention, to solve this problem. But that doesn't mean that any implementation of this invention ought to be limited to solving just that one problem. If inventors find it helpful to use at various load currents, I think that is clearly covered by the claims, which don't have the limitation that AATI seeks to import from the specifications examples or from prior prosecution history into the claims, and that's changing from one state of circuit operation to the other based on load current. That limitation simply does not exist. Now, they argue that because the first state of circuit operation and second state of circuit operation limitations were in the prior claim that, you know, where they actually made this argument that the first state and second state ought to include this limitation. The fact is, if you look at that prosecution history, they were arguing and just plainly describing a limitation that was present in the claim that they were discussing during that prosecution history, and it is not present in this claim. Let me ask you one question, if I could. There was a reference, I believe, in Mr. Davis's argument to an inconsistency in the commission's decision with respect to claim, I think it was claim 34? Claim 34, yes. And your honor... What's your response to that? Your honor, our response is essentially outlined in our brief, which is that we do acknowledge the inconsistency in the commission's opinion. Depending on how, you know, Mr. Davis has made arguments and Mr. Thomas has made arguments regarding claim construction, depending how those come out, that will impact claim 34. But the fact of the matter is the commission has acknowledged that inconsistency in the commission opinion and resolution of that will depend on the other party's arguments. Turning to Mr. Thomas's second and third circuit limitation arguments, this is similar to the first and second state. I'd like to just bring up a case, actually, that's cited in AATI's brief, and that's the 3M case, which makes clear that this convention of using first, second, third to describe common limitations is just a patent law convention to distinguish between the two. It doesn't necessarily mean that there's a limitation inherent from one to the other, other than that the two be different and distinct, which is exactly what the commission held needed to exist between the second and third circuit. So the commission answered that question consistent with 3M and consistent with the language in the claims, which is that the second circuit needs to be distinct from the third circuit. Now, Mr. Thomas makes an argument here that they're not distinct enough. I'd just like to point out that the two arguments they make regarding this ZC comparator, which is the circuit component that distinguishes the second circuit from the third circuit, are rather inconsistent. On the one hand, they argue that the second control signal identified doesn't turn the transistors off because of participation by the ZC comparator. Then on the other hand, they make this strawman argument that, well, the ZC comparator is just circuitry plucked out of The commission would submit that it needs to be one way or the other, and I think it's fairly undisputed that the ZC comparator does participate in the operation of the third circuit by turning that bottom transistor off. Of course, we're neither the second circuit nor the third circuit. We're the federal circuit. That too, Your Honor. Turning briefly to the switch, including a pair of synchronously switching transistors language, the commission would just like to point out that the specification never mentions control as a single unit of the two transistors. Also, I'd just like to point out that what's essentially a strawman argument that the commission's construction would cover transistors that switch randomly and sometimes happen to switch synchronously. In the infringement analysis, there's no dispute among the parties that the transistors in AATI's devices do switch synchronously. Their expert admitted it. Linear's expert presented testimony on it. It's not just random. It doesn't just happen once in a while. In fact, there's undisputed testimony that if they ever did not switch synchronously such that they were both on at any given time, the device wouldn't work. It would cause a short circuit. So that is essentially a strawman argument about the random switching that happens to be regarding Claim 35 and its invalidity. Let me ask you this. I understand that AATI wants that limitation you were just discussing, the switches, construed as a switch that includes a pair of transistors connected for complementary switching and controlled as a single unit. That's what they want, is their construction? I don't want to put words in their mouth, but yeah, I think that's an accurate paraphrase of it. All these different constructions. It's a confusing case. What's wrong with that? You have a switch. It's got a couple of transistors in it, and they are connected to work together. Isn't it controlled as a single unit? The switch controls the single unit. I presume when you say switch, you're talking about the switch that's I guess what I'm talking about, well, I'm talking about trying to get the claim construction. I guess I'm talking about the, you go to this drawing two patent, excuse the crude term here, but this thing that's labeled 15 with the dotted lines around it. That's the switch, right? Oh yeah, and let me get to the figure. But yes, indeed, that is the switch. And you'll note that if you compare that to the diagrams of AATI's products, they look virtually identical. No, but I'm just saying that the claim construction, I guess AATI is saying a switch that includes a pair of transistors, right? We got the transistors there, 16 and 17, right? Yeah. Connected for complementary switching, goes back and forth, and controlled as a single unit. Well, I think, your honor, there's a couple issues. And the first is, this controlled as a single unit, and the commission pointed this out, these two transistors are actually driven by circuit 20 now in that same diagram, which is the driver circuit. And they're actually controlled by two different drivers, the P driver and the N driver. So, they may be controlled as a single unit if you trace back far enough, you can find a single where it splits. But this idea of connected for complementary switching, the fact of the matter is, and I'm going to turn briefly to infringement, but this connected for complementary switching, AATI's devices are connected in a way such that the switches switch in a complementary fashion. So, I think there's an argument that even under that construction that AATI's devices do meet it. And I think that's part of the problem is, this isn't necessarily defined or discussed in either the claim or the specification. The closest the specification came to a definition of this was exactly the one pointed out by the commission in its opinion, which only required synchronous switching, such that one is on and the other is off and vice versa. But, again, that is undisputed. One more point on this, Your Honor, and that's that definition that AATI claims is inconsistent with actual language of the claim because it's synchronously switched switch as opposed to the language, you know, specific to the claim. Or what they pointed to in the spec. Right. So, I think it's fair to say... Column 7. Yes. Is that right? Yeah. I think it's fair to say that they define, the patent defines synchronously switch. They claim that that's an error to rely on that definition because the claim uses slightly different language. But the fact of the matter is, that discussion is about the exact switches that AATI uses to try to import their limitations, their preferred limitations into the claim. So, I think that's really a distinction without a difference between that definition and what's claimed. I see that I'm just about out of time. So, I will wrap up. Thank you. Thank you. Your Honor, let's start off with switch, since we were talking about that. The problem, there are several problems with AATI's proposed definition. First of all, it doesn't really help resolve any ambiguities. To the contrary, this controlled, connected to be controlled as a single unit, creates additional ambiguity. Down below, AATI was arguing that it had to be an identical circuit to be operated, controlled as a single unit. On appeal, they backed off of that to a certain extent. But the fundamental point is, is that AATI's definition is purportedly based on the spec. But yet, the way in which AATI is interpreting its interpretation, it reads out the preferred embodiment of the spec. Because in the preferred embodiment, in figures two, figure seven, you've got... So, you're making a claim construction argument or infringement argument? Claim construction. Because it seemed to veer off. You referred to the way they interpret the interpretation. Right. And that was my point as to why their interpretation is both unnecessary and, in fact, harmful. Because rather than creating clarity, it creates ambiguity. There's no reason to go away from the actual language of the claim and the specification. This random firing of the top and the bottom transistor is a red herring. And the commission's construction takes care of that issue. It requires that it's a switch, including two switching transistors that are driven out of phase to supply current at a regulated voltage to a load. Okay. If they're randomly firing, not only will they not provide the regulated voltage, because they won't be synchronously switching where one is on and one is off, they're going to burn out the chip and, very possibly, the load because they'll both go on and you'll have an overvoltage flow through that will burn out the chip and the load. So, this definition, which is the definition that actually appears in the specification, is what most accurately describes the invention. The ATI's proposed definition reads out the preferred embodiment, which does not have a single circuit controlling both the top and the bottom transistor. So, on first and second state of operation, ATI does not correctly portray the prosecution history. There was different claim language at issue and the discussion that took place in the prosecution history addressed a different issue. The issue was, what is the triggering event of turning both transistors off? It had nothing to do with the other issue, which is the basis of ATI's non-infringement position of when you can have the transistors turned back on. And, again, their proposed definition flies in the face of the specification because the specification at column seven at approximately lines 11 through 28 goes through the situation of extended times of low load demand for current. And, in those instances, what you're going to have, and claim 34 actually has step D, which explicitly anticipates this situation, is you're going to have a low load current for an extended time when your computer is off. But, periodically, the capacitor is going to run out of the necessary juice. And so you're going to need to periodically switch back on in order to ramp it up, to give it enough reserve. And once it has enough reserve, then it'll go back into sleep mode. Throughout that entire time, you're in a low load current situation. But you periodically need to turn it back on. If you don't, the invention doesn't work. And, indeed, there is no point for the step D that's stated in claim 34. One other thing, Your Honor, just quickly. Based on the ITC's admission earlier with regard to claim 34, it sounds as if the court does not overturn the ITC's claim construction, then all the accused products infringe claim 34 because they've all been shown to have that first and second state of operation. With regard to the Third Circuit, now, infringement here is really pretty straightforward. As both the ALJ and the Commission noted at JA101 and JA191, it really comes down to claim construction. ATI's non-infringement position is based on an overly narrow construction of the Third Circuit that, in application, the way they argued their infringement, it's not that any circuit that participates. There has to be a single signal that turns off both transistors. If you look at the claim language of the Third Circuit, you'll see that the Third Circuit, for generating a second control signal during a second state of circuit operation to cause both switching transistors to be off. As long as it participates, as long as it approximately causes, there's infringement. This was properly noted by the Commission with regard to the 1143 and the role that the ZC and the CMP signals played in, together, causing both transistors to be turned off. As we've detailed in our briefs, we have shown that the 1146 also uses the same circuitry, the CMP and the ZC. In the case of the 1151, we have the clock signal, the circuitry that creates the clock signal. For the 1265, we have the circuitry that creates the stop clock circuitry. All right, sir. Thank you. Thank you. Yes, thank you, Your Honors. Quickly, Claim 34 on infringement. Claim 34 is a method claim. All the evidence in the record pertains to how the product that was imported alone could operate. There's no evidence that AATI did all the steps of Claim 34. The evidence that the linear and the Commission just cited about a deposition testimony, that evidence is vague and ambiguous at best. It was not in the Commission's decision. It would be a Chenery problem if you affirm a finding of infringement on Claim 34 on that. You didn't really highlight 34 much during the course of the proceedings, though, did you? I was going to argue as part of a... Linear, yeah. Linear conflated that with the apparatus claims. That led to what happened was there was a finding of non-infringement of all the claims. But on appeal to the Commission, Linear, again, did not focus on Claim 34 in its petition for review. So there is no evidence on the practicing the steps of Claim 34. And again, an article cannot practice a method claim. Another important thing is these are chips that are sold without any capacitor or other external components. It's not the full circuit of the claim. It's undisputed that these products do not have an output capacitor. The ALJ made a finding that Linear failed to put in evidence of the external components connected, how any final circuit was structured, and how any final circuit was operated. Thomas, let me ask you one question. Maybe you're not the person to whom this question should be addressed, but all of the briefs and the appendices have confidential marked on them. Does that mean in any opinion that the court produces there should be certain things that are left out? I mean, how do we handle that? How does the court handle that in writing an opinion that's meaningful? All three parties discussed that last night. And we just then forget about the confidentiality stuff for purposes of an opinion? All the discussion here today is at a high enough level that it would not reveal any internal circuit diagram. There are some, in the Joint Appendices, some schematics that do have some confidential information that AHI would like protected. And there's color-coded, high-level circuit diagrams in the briefs that have confidential information in them. Does that answer the question? Yeah, so you want the court to speak in sort of generalities? I think the signal names and what circuit, you know, we call the ZC comparator, and it's called a CMP or comp comparator, and the comp signals, that's fine to discuss. I also want to get to states of circuit operation very quickly. The column six that Mr. Barkowski read does discuss the sleep mode. Take another minute and a half or so, since you took care of the housekeeping on behalf of everybody. Okay, thank you. Where it says state of circuit operation, that top of column six says, under conditions, so under conditions where the circuit, where the output voltage can be maintained substantially at the regulated voltage. Again, it's talking about its own operating conditions. And then it says, we'll tell you down below, how you go into sleep mode. And it says, in accordance to the president mentioned, the regulated circuit goes into sleep mode at low output currents. Again, it's tying the low output current to the second state of circuit operation. On switch, the linear argued that the instruction does not matter. It certainly does matter. The ALJ found that there are two independent switches. We do not have one switch in our product. There's two independent switches with independent circuitry. It is true that at some points in time, they're switching out of phase, but they're not driven out of phase. They are switching out of phase, and sometimes, and in fact, very often, are switching not out of phase. And they are built that way because they have two separate logic circuits, and one of which operates on different conditions than the other. So it's not the situation in the patent where you have one switch turning on, and then the other one must be off, and vice versa. They can both be off in normal operation. Figure two of the patent, they said that our construction would be without the preferred embodiment. That is not true. I think your time is up, sir. Oh, sure. Thank you.  Case is submitted. Thank you, your honor. Thank you.